J-S22023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HECTOR MANUEL SOTO, JR. | : | |
| | : | |
| Appellant | : | No. 25 MDA 2021 |

Appeal from the PCRA Order Entered December 10, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0006101-2004

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED OCTOBER 20, 2021**

Hector Manuel Soto, Jr. (Appellant) takes this counseled appeal from the order entered in the Berks County Court of Common Pleas, following a hearing, dismissing his fourth Post Conviction Relief Act[1] (PCRA) petition as untimely filed.  Appellant seeks collateral relief from his jury convictions of, *inter alia*, second and third degree murder.[2]  On appeal, Appellant argues the PCRA court erred in dismissing the petition as untimely after he presented newly discovered evidence of an alleged eyewitness and a recantation by a trial witness.  The PCRA court found Appellant raised these issues in a 2017 PCRA petition.  For the reasons that follow, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(b), (c).

The PCRA court summarized the underlying facts of this case as follows:

During the evening of October 3, 2004, Jason Stief and Courtnee Salvati were visiting the home of Miguel [(Victim)] and Dallanara Colon at 1024 Perry Street in the City of Reading, Berks County. The Colons' eighteen-month-old child was also present. Three uninvited men entered the residence through the unlocked exterior door.

Each of the intruders was wearing a hooded sweatshirt and two of them had the hoods pulled tight around their faces. Each of the intruders also carried a gun and pointed it at one or several of the victims. One intruder told [Victim] to give him everything he had; meanwhile, the other intruders held Ms. Salvati, Mr. Stief, Ms. Colon, and the baby at gun point. When [Victim] responded that he didn't have anything, one intruder struck him on the head with the gun. [Victim] gave something to one of the men, but they continued arguing with him, demanding more money. [Victim] then ran outside with all three intruders pursuing him. Within seconds of their exit, four or five gunshots were fired.

Shortly after the gunfire, Mr. Stief, Ms. Salvati, and Ms. Colon, who was carrying the baby, left the house looking for [Victim]. Other individuals found [Victim] wounded and lying on the sidewalk. A group of individuals then gathered, including Ms. Colon, Mr. Stief, Ms. Salvati, and Mr. Stief's mother, who lived in the neighborhood. Mr. Stief told Ms. Salvati that he knew the identity of one of the intruders. Mr. Stief spoke with detectives[3] from the City of Reading Police Department and identified [Appellant] from a JNET photograph as one of the perpetrators. [Victim died as a result of this shooting.]

Michael Cortez, who shared a cell with [Appellant] at prison, testified that [Appellant] told him that he was incarcerated for homicide and one of the witnesses knew him from school. [Appellant] indicated that the witness probably could not

_____

[3] Initially, Stief told police a man named "Hector Rosario" was involved in the incident; however, after further investigation, police concluded Stief "simply forgot, or misstated, the last name of the 'Hector' he was referring to." *Commonwealth v. Soto*, 1427 MDA 2007 (unpub. memo. at 2-3 n.2) (Pa. Super. Jan. 5, 2009), *appeal denied*, 60 MAL 2009 (Pa. May 5, 2010).

recognize him because a hooded sweatshirt was covering his face at the time of the robbery. In addition, [Appellant] said that he did not need to worry about that witness because he made sure the witness was deceased. Mr. Stief was shot and killed [approximately 11 days after this shooting,] while [Appellant] was incarcerated, prior to the preliminary hearing.

PCRA Ct. Op., 3/8/21, at 5-6.

This case proceeded to a jury trial on July 9, 2007, and Appellant was found guilty of second degree murder, third degree murder, simple assault, robbery, burglary, possession of an instrument of crime, criminal trespass, and conspiracy.[4] The trial court sentenced Appellant on July 31, 2007, to life imprisonment. This Court affirmed his judgment of sentence on January 5, 2009. *Soto*, 1427 MDA 2007. Appellant sought allowance of appeal with our Supreme Court, which was denied May 5, 2010. *Soto*, 60 MAL 2009.

Appellant filed a timely, counseled first PCRA petition, which was dismissed after a hearing on December 9, 2011. This Court affirmed the dismissal on September 10, 2012. *Commonwealth v. Soto*, 2260 MDA 2011 (unpub. memo.) (Pa. Super. Sept. 10, 2012), *appeal denied*, 801 MAL 2012 (Pa. Apr. 17, 2013). Appellant then sought allowance of appeal with our Supreme Court, which was denied April 17, 2013. Appellant filed a second PCRA petition, which was dismissed on April 12, 2016. He did not appeal.

---

[4] 18 Pa.C.S. §§ 2701(a)(1), 3701(a)(1)(ii), 3502, 907(b), 3503, 903, respectively.

On November 20, 2017, Appellant filed a third PCRA petition and supplemental petition,[5] alleging newly discovered evidence. Appellant cited both: (1) a September 25, 2017, private investigator interview with an alleged eyewitness to the shooting, Lucas Faith;[6] and (2) the recantation of Commonwealth trial witness, Michael Cortez. PCRA Ct. Op. at 9. The PCRA court dismissed these petitions on April 5, 2019. Appellant filed an appeal on April 29, 2019. While that appeal was pending, Appellant filed the underlying, fourth *pro* se PCRA petition on June 27, 2019.[7] Appellant then filed a counseled motion to discontinue the appeal of his third petition, which this

_____

[5] Appellant filed both a "Motion/Petition for DNA Testing" and a *habeas* petition requesting an evidentiary hearing. The PCRA court construed them both as Appellant's third PCRA petition. **See** 42 Pa.C.S. § 9542 (PCRA shall be the "sole means of obtaining collateral relief and encompasses all other common law and statutory remedies[,] including habeas corpus[.]"); **Commonwealth v. Pagan**, 864 A.2d 1231, 1233 (Pa. Super. 2004) ("[I]f the underlying substantive claim is one that could potentially be remedied under the PCRA, that claim is **exclusive to** the PCRA.") (emphasis in original).

[6] Private Investigator Tom Pisano interviewed Faith in 2017 regarding a murder trial for defendant Norman Vega. Vega then mailed Appellant's present PCRA counsel, Jack McMahon, Esquire, a letter with Private Investigator Pisano's notes from the Faith interview. Appellant's Supplement to Pending *Habeas Corpus*/ PCRA Petition, 11/20/17, Letter to Jack McMahon, Esquire.

[7] Both the Commonwealth and Appellant state that Appellant also filed a supplement to his fourth petition on July 22, 2020. Appellant's Brief at 9-10; Commonwealth Brief at 5. The Commonwealth contends Appellant filed this supplemental brief without leave of court. Commonwealth Brief at 5. However, it does not appear this supplement is included in this voluminous record.

Court granted on September 28, 2020. *Commonwealth v. Soto*, 707 MDA 2019 (order) (Pa. Super. Sept. 28, 2020).

The PCRA court held an evidentiary hearing on Appellant's fourth petition on July 30, 2020. Appellant, represented by Attorney McMahon, presented two witnesses, Faith and Cortez. Appellant testified at the PCRA hearing that he learned of Faith's interview with a private investigator after "someone on the street" sent his family a letter. N.T. PCRA H'rg, 7/30/20, at 110. Appellant sent his third PCRA counsel, Lara Hoffert, Esquire, this letter "expecting" her to "follow up" on Faith's interview, but "she did not do that." *Id.* Appellant subsequently contacted Private Investigator Pisano to reinterview Faith. *Id.* at 110.

Faith testified that on the night of the shooting in 2004, 15 years earlier, he was 12 years old. N.T. at 24. Around 9:30 p.m., he was near 10th and Perry Streets in Reading, Pennsylvania. *Id.* at 26, 40. Faith saw three men, whom he recognized "from the neighborhood[,]" and identified them as Orlando, Hector, and Tony. *Id.* at 27-28. Faith observed the three men enter a home after a food delivery "[a]nd a short time after that," Faith saw a "bald man[,]" who was Victim, run toward an alleyway followed by the three men. *Id.* at 30-32. Faith stated that Orlando "fired two to three shots" toward Victim. *Id.* at 31. Faith did not go to police because he "felt it was not safe[.]" *Id.* at 32-33. Faith also stated that on September 25, 2017, he told Private Investigator Pisano about witnessing this crime. *Id.* However, Private Investigator Pisano did not show a photo array to Faith during this interview.

- 5 -

*Id.* at 34. Nineteen months later, on May 17, 2019, Private Investigator Pisano reinterviewed Faith and showed him "numerous photos of people named Hector." *Id.* at 37, 39. Faith stated that Appellant was not the Hector he saw the night of the incident. *Id.*

Appellant also claimed newly discovered evidence in the form of a recantation by Commonwealth trial witness, and prison informant, Michael Cortez. As stated above, Cortez testified at trial that Appellant admitted to him he was involved in the murder of Victim. N.T. at 116-17. At the PCRA hearing, Cortez stated that his testimony at the trial "was all false." *Id.* at 116. Cortez stated Appellant never made an admission to him while in prison together and he only learned of the details of the incident when police showed him another witness's written statement. *Id.* at 120. Cortez stated he only agreed to testify at trial after police threatened "to deport [his] family[,]" and gave him "rent money" and "[h]ockey tickets[.]" *Id.* at 119, 121-22.

The PCRA court dismissed Appellant's fourth petition on December 10, 2020, finding it was untimely filed. This timely appeal follows. Appellant timely complied with the PCRA court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following claims on appeal:

A. Whether the trial court erred in denying [ ] Appellant's PCRA petition where [ ] Appellant presented newly discovered exculpatory evidence of an eyewitness, Lucas Faith[,] which would have affected the outcome of the trial?

B. Whether the trial court erred in denying [ ] Appellant's PCRA petition where [ ] Appellant presented newly discovered

evidence in the form of the recantation of one of two prison informants on whom the Commonwealth relied to prove its case, Michael Cortez?

Appellant's Brief at 5.

The standard by which we review PCRA petitions is well settled:

> Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court. [ ] The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (citations omitted).

First, we must address the timeliness of the petition:

> "Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition." The timeliness requirement for PCRA petitions "is mandatory and jurisdictional in nature."
>
> &ast; &ast; &ast;
>
> A PCRA petition is timely if it is "filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

*Commonwealth v. Montgomery*, 181 A.3d 359, 365 (Pa. Super. 2018) (*en banc*) (some citations omitted).

In the instant case, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 5, 2010. Appellant then had 90 days to seek *certiorari* with the United States Supreme Court. **See** S.Ct.R. 13(1). Appellant did not, and thus his judgment of sentence became final on Monday, August 9, 2010.[8] Appellant then generally had one year, or until August 9, 2011, to file a PCRA petition. **See** 42 Pa.C.S. § 9545(b)(1). Appellant filed the present PCRA petition on June 27, 2019, approximately eight years thereafter.

We thus consider whether Appellant properly invoked one of the timeliness exceptions below:

> (1) Any [PCRA petition], including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the

---

[8] The ninetieth day after May 10, 2010, was Sunday, August 8th. We thus conclude his judgment of sentence became final the following day, Monday. **See** 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

> Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>
> > (2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

*See* 42 Pa.C.S. § 9545(b)(1)-(2) (2017).[9]  The PCRA court found Appellant failed to properly invoke any of these exceptions.

In his first claim, Appellant argues the PCRA court erred in denying relief when he presented the newly discovered evidence of Faith's exculpatory eyewitness account.  Appellant's Brief at 12.  Appellant maintains Faith "was not a known witness" at the time of trial, "was not on any discovery list[,]" and "would have testified" at trial if Appellant subpoenaed him.  *Id.*  When shown a photograph of Appellant on May 19, 2019, Faith told Private Investigator Pisano that Appellant "was not . . .part of the three man group that" committed the robbery and murder.  *Id.* at 13, 15.  Appellant avers Faith testified about the 2004 crime "for the very first time" at the July 30, 2020, PCRA hearing.  *Id.* at 12.  Appellant insists he could not obtain this evidence before his trial because Faith "told nobody . . . what he observed that night" and "nobody" was aware he "was an eyewitness."  *Id.* at 14.  Appellant argues Faith's testimony is "accurate and credible" because he knew information

_____

[9] This subsection was amended, effective December 24, 2018, to provide petitioners with one year to invoke a timeliness exception regarding "claims arising on Dec. 24, 2017[,] or thereafter."  42 Pa.C.S. § 9545(b)(2); Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, effective in 60 days.  Because Appellant learned of the evidence at issue in his claims before the effective date of the amendment, the amendment is not applicable here.

"consistent [and] unique to the incident," including the use of a single gun, Victim being bald and fleeing the home, the number of perpetrators and what they were wearing, and that a pizza delivery immediately preceded the robbery). *Id.* at 16-17. Appellant contends Faith's testimony is exculpatory, "exonerates [him as] a participant in any way[,]" and is "extremely likely to have had an [effect] on the jury's determination of guilt." *Id.* at 14.

Contrary to Appellant's contention that he first learned of Faith's "exonerating" statement after Faith's May 19, 2019, interview with Private Investigator Pisano, we agree with the PCRA court that Appellant knew of this evidence in 2017. The PCRA court stated:

> [Appellant] knew about [Private Investigator] Pisano's first interview with [Faith] on September 25, 2017[,] when [Appellant] filed his third PCRA petition on November 20, 2017[,] because he alleged in that petition that it was newly discovered evidence. [Appellant] made no efforts to gather the necessary additional information from [ ] Faith until a second interview with Mr. Faith was conducted on May 17, 2019, almost twenty months after the first interview and eighteen months after [Appellant] filed his petition alleging this evidence. In the first interview, Mr. Faith just said that [Appellant] had not fired the shots. He never presented any evidence that [Appellant] had not been present during the shooting. Thus, [Appellant] did not exercise the requisite due diligence to bring the issue regarding the second interview timely before this court.

PCRA Ct. Op., at 9. Further, in Appellant's third PCRA petition, he claimed the men Faith saw during the incident "did not include [him]," and Faith "will absolutely be able to testify that [Appellant was] not" present during the incident. Appellant's Supplement to Pending *Habeas Corpus*/PCRA petition, 11/20/17, at 3 (unpaginated); Appellant's sworn affidavit, 11/20/17.

Appellant was insistent in 2017 that Faith's statement was exculpatory, but he failed to exercise due diligence or further investigate the claim within the allotted 60-day period. *See* 42 Pa.C.S. § at 9545(b)(2) (2017). We agree with the PCRA court's conclusion that this claim is time barred. *See* 42 Pa.C.S. § 9545(b)(1)(ii), (2). Thus, no relief is due.

In his second claim on appeal, Appellant argues the PCRA court erred in denying relief when he presented the newly discovered recantation of Commonwealth trial witness Cortez. Appellant's Brief at 20. Appellant cites Cortez's admission, at the PCRA hearing, that his trial testimony "was completely made up and a lie." *Id.* Cortez gave "the fabricated testimony to stop [g]overnment efforts to deport his family." *Id.* Appellant maintains he could not bring a claim about Cortez's recantation at an earlier time because Cortez "never opened up about his lie until 2019." *Id.* at 22. Appellant insists that if Cortez told the truth at trial, "it would have eliminated a significant part of an already less than stellar case." *Id.* at 20.

The PCRA court likewise found Appellant previously raised this issue, in his 2017 third PCRA petition. PCRA Ct. Op. at 10. Appellant does not address, nor dispute, this analysis. Our review of the record supports the PCRA court's finding — that Appellant included this claim, citing the same information that was in Cortez's 2020 PCRA hearing testimony, in his 2017 *habeas corpus* petition. *See* Appellant's *Habeas Corpus* Petition, 9/14/17, at 34. In his *habeas* petition, Appellant also averred Cortez fabricated his testimony based on information police provided to him and argued why Cortez gave false

- 11 -

testimony at trial. *Id.* at 37. We again agree with the PCRA court's conclusion that Appellant's claim does not meet the newly discovered fact exception to the PCRA time bar because he knew of Cortez's recantation in 2017. *See* 42 Pa.C.S. § 9545(b)(1)(ii), (2); PCRA Ct. Op. at 9. Thus, the court was without jurisdiction to hear the present petition. *See Montgomery*, 181 A.3d at 365. Finally, we agree with the PCRA Court's determination that Appellant's claims were previously litigated in his third PCRA petition, and thus are not eligible for PCRA relief. *See* PCRA Ct. Op. at 9-10; *see* 42 Pa.C.S. § 9543(a)(3) (to be eligible for PCRA relief, the allegation cannot be previously litigated). No relief is due.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2021